IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**JACOB BLAIR SCOTT**                                                                  **PLAINTIFF**

v.                                                    CIVIL NO. 1:21-cv-00189-HSO-RHWR

**JACKSON COUNTY**                                                                      **DEFENDANT**
**SHERIFF'S DEPARTMENT et**
**al.**

## REPORT AND RECOMMENDATION

BEFORE THE COURT is a prisoner suit filed *pro se*[1] by Plaintiff Jacob Blair Scott that challenges the conditions of his confinement while a pretrial detainee at Jackson County Adult Detention Center ("JCADC") in Pascagoula, Mississippi. Plaintiff's thirty-four-page Amended Complaint [7] advances federal and state law claims against numerous Defendants across numerous subject matters. There are nine Defendants, and Plaintiff desires to add two more.

Three Motions are before the Court. Defendant Vital Core Strategies, LLC ("Vital Core") is a contract provider of healthcare services at JCADC. [20] at 1 n.2. Vital Core and its employees, Nurses Amanda Harris and Angie Hand, have filed a Motion to Dismiss [19]. Collectively, Vital Core and Nurses Harris and Hand are referred to as "the Vital Core Defendants." Defendant Jackson County Sheriff's Department has filed a Motion for Judgment on the Pleadings [28]. More recently, Plaintiff filed a Motion for Extension of Time to Amend Complaint and Pleadings [39].

---

[1] In a previous Order [40], the Court incorrectly stated that Plaintiff was proceeding *in forma pauperis*. Plaintiff has paid the filing fee and costs of service of process.

Having considered the submissions of the parties, the record, and relevant law, it is recommended that the Vital Core Defendants' Motion to Dismiss [19] be granted in part and denied in part; Jackson County Sheriff's Department's Motion for Judgment on the Pleadings [28] be granted; and Plaintiff's Motion for Extension of Time to Amend Complaint and Pleadings [39] be held in abeyance until after Defendants have responded to the Motion [39]. Plaintiff's claims in the Amended Complaint, as supplemented by his testimony at the omnibus hearing, should proceed for now, with the exception that Plaintiff's claims advanced pursuant to the Health Insurance Portability and Accountability Act ("HIPAA") should be dismissed without prejudice for lack of subject matter jurisdiction, and the Jackson County Sheriff's Department should be dismissed as an improper party because it is a department of Jackson County and not a legal entity or political subdivision capable of being sued.

## I. BACKGROUND

A. Procedural background

Plaintiff entered JCADC as a pretrial detainee in March 2020 and is currently awaiting a postconviction transfer to a Mississippi Department of Corrections ("MDOC") facility. [39] at 5. Plaintiff's Complaint [1] was filed on June 2, 2021, and an Amended Complaint [7] was filed on August 12, 2021. The Complaint and Amended Complaint are almost identical. The Amended Complaint [7] is now the operative pleading.

In October 2021, the Vital Core Defendants filed a Motion to Dismiss [19] arguing that the Amended Complaint [7] fails to state a legible, concise, and non-

conclusory claim, and Plaintiff did not comply with Mississippi law's pre-suit notice requirements before filing an action advancing medical malpractice claims. [19] at 1-3. Plaintiff responded [24] [25] to the Motion to Dismiss, and the Vital Core Defendants did not file a rebuttal.

An omnibus hearing was held in January 2022. [27] at 1-55. The Court questioned Plaintiff first, and then defense counsel questioned Plaintiff. [27] at 43-55. A few days following the omnibus hearing, Jackson County Sheriff's Department filed a Motion for Judgment on the Pleadings [28], urging that it is not a political subdivision or legal entity with the capacity to be sued and should be dismissed. Plaintiff did not respond to the Sheriff"s Department's Motion.

In June 2022, five months after the omnibus hearing, and over two months after the deadline for amending pleadings and joining parties, Plaintiff filed a Motion for Extension of Time to Amend Complaint and Pleadings [39]. Plaintiff desires to add two additional Defendants and assert claims based on incidents that occurred after the omnibus hearing. Defendants have not responded to Plaintiff's Motion.

B. <u>Plaintiff's current allegations as stated in the Amended Complaint and supplemented by his omnibus hearing testimony</u>

Plaintiff's current allegations are summarized below from the Amended Complaint [7], as supplemented by Plaintiff's sworn testimony at the omnibus hearing. The allegations concern medical care, lack of privacy, hair clippers, and lighting. The allegations directed toward Sheriff Mike Ezell and Captain Tyrone Nelson encompass more than one subject matter and are addressed separately.

1. <u>Medical care allegations</u>

Plaintiff's medical care allegations concern ulcerative colitis, a knee injury, and coronavirus.

a. <u>Ulcerative colitis</u>

Plaintiff was diagnosed with chronic ulcerative colitis in 2017. [27] at 39. He alleges that this condition was not treated during the time he was a pretrial detainee at JCADC. *Id.* Plaintiff asserts that prior to his arrival at JCADC, while he was in custody in Oklahoma, a doctor prescribed him medication for ulcerative colitis because Plaintiff was bleeding. *Id.* at 12-13. Plaintiff reports that before Oklahoma, he received medication to treat ulcerative colitis through the Department of Veterans Affairs ("VA"). Plaintiff alleges that he asked Nurse Hand multiple times for "some kind of medical for my ulcerative colitis," and she told him to "put it on the kiosk." *Id.* at 11. Plaintiff claims that Nurse Hand oversaw the medical cart and "denied [him] medication for Ibuprofen or headache medicine just in general" and "medical treatment for my ulcerative colitis." *Id.* at 11, 27.

Upon intake at JCADC, Plaintiff provided a blood sample and a stool sample for medical testing. He alleges that Nurse Hand told him that the results were normal. *Id.* at 11, 20, 27. Plaintiff told Nurse Hand that he wanted to see the actual test results and needed to see a doctor because he was hurting. *Id.* at 11, 20, 27. She allegedly told him to "put it on the kiosk." *Id.* at 11, 27.

Plaintiff was told that another stool sample would be taken and provided stool softeners. *Id.* at 21. When Plaintiff tried to give Nurse Hand a second stool sample,

she allegedly told him, "it's the holidays coming up. You might as well flush it." *Id.* at 15. Plaintiff tried again to provide a stool sample but "they never came and picked it up from me." *Id.* at 16. At some point, Plaintiff was no longer given stool softeners, which he claims he needed, and experienced difficulties and delay getting them through the commissary. *Id.* at 22. Plaintiff is suing Deputy Geneva Drummond because she denied him extra toilet paper, which he claims he needs due to ulcerative colitis, and told him to "use his hand." *Id.* at 22, 30-31, 45.

Plaintiff maintains that a representative from the VA called Nurse Harris more than once and made her aware of his medical needs. *Id.* at 18. Nurse Harris allegedly was told about the medications that Plaintiff had been prescribed for years through the VA. *Id.* According to Plaintiff, the representative told Nurse Harris that the VA would provide the medications if JCADC would allow Plaintiff to take them. *Id.* at 18. Plaintiff asserts that his attorney's paralegal and his mother also called Nurse Harris pleading for Plaintiff to be given the medication he needed. *Id.* at 19. At the omnibus hearing, Plaintiff alleged that despite pleas for treatment, his obvious bloody stools, and witnesses to his condition, he was not allowed to see a doctor. *Id.* at 12.

Plaintiff asserts that Vital Core is liable for the conduct of Nurses Harris and Hand and has "been made aware of the situation and have ignored it, with phone calls and letters up until suit." *Id.* at 10, 19. Plaintiff is suing CT Corporation Systems because he was told that it is a parent company or possibly an insurer of Vital Core. *Id.* at 37.

5

  b. <u>Knee injury</u>

Plaintiff is suing Nurse Hand because he alleges that she would not provide him treatment when he slipped and fell at JCADC, aggravating a torn ligament in his knee that "took a few weeks . . . to go away." *Id.* at 13-14. Plaintiff claims Nurse Hand saw that he could not walk but told him to "put it on the kiosk." *Id.* at 14.

  c. <u>Coronavirus</u>

Plaintiff asserts that JCADC did not take steps to protect him from coronavirus infection, resulting in him being infected "multiple times" while at JCADC. *Id.* at 33-34. Plaintiff experienced "a headache, runny nose, snot, sore throat, hoarseness," chills, "[s]evere respiratory," loss of energy, and does not know if he had fever because he did not have access to a thermometer. *Id.* Plaintiff believes that JCADC should have provided him a mask, and eventually he was provided a mask. *Id.* at 33.

 2. <u>Lack of privacy allegations</u>

Plaintiff seeks relief on grounds that he was strip searched in front of cameras and other people; he lacked privacy to communicate with his criminal defense attorneys; his medical conditions were discussed in front of others, and his mail was opened outside his presence.

  a. <u>Strip search</u>

Plaintiff alleges that he was strip-searched in front of cameras and other people, including females. *Id.* at 30. He faults the procedures of the Jackson County Sheriff's Department and Captain Nelson for this happening. *Id.*

6

      b.      <u>Communications with attorneys</u>

Plaintiff asserts that JCADC's visitation room was shut down due to coronavirus restrictions, denying him the privacy he needed with his attorneys to prepare for his criminal trial. *Id.* at 34. Plaintiff asserts that he could not properly prepare over the phone because the calls were recorded. *Id.* Plaintiff testified that he asked Captain Nelson to provide him a secure phone line. *Id.* at 35.

      c.      <u>Discussions about his medical condition.</u>

Plaintiff claims that Nurse Hand violated his rights under HIPAA because, during his intake at JCADC, she made him discuss embarrassing and private details about his medical condition in front of other inmates.

Plaintiff asserts that Nurse Harris also violated his rights under HIPAA when she would not close the door to the room where he was meeting with a retained expert in his criminal case. *Id.* at 40. Plaintiff alleges that "Deputy Bernie escorted me from the cell over across from the nurse's station into a room there and left the door open and said he had to be present." *Id.* Plaintiff maintains that the "[t]he nurses were going in and out, all around, the door was open, and he would not leave the room." *Id.* at 41. Plaintiff asserts that he was required to "sit there and talk about all of my medical history, all my family history, with all the nurses and Amanda Harris." *Id.* He asked Nurse Harris if the door could be closed, and she said, "No, we are not closing the door." *Id.*

   d. <u>Mail</u>

Plaintiff alleges that he "can prove that [his] legal mail has been opened and read, I can prove that my room has been searched out of my vision, with my legal work gone through, pulled out, completely out of the folders, wouldn't allow me to contact my attorneys." *Id.* at 35. Plaintiff is suing John Barnes because he is "over the mail that comes in and out of the facility" and has allegedly violated his right to due process. *Id.* at 31. Plaintiff emphasized at the omnibus hearing that his complaint is not that his mail was opened but that it was opened outside his presence where he could not see it "to make sure they are not taking any photocopies of it or Xeroxing it or relaying it to the District Attorney's office of whoever the powers may be." *Id.* at 46. Plaintiff believes that some of his legal mail has not made it to him. *Id.* He claims that because there is no "chain of custody," he is at the mercy of JCADC with respect to his legal mail. *Id.* at 46-47. He asserts that there is sometimes a two-week delay between the date the court dates a document and when he receives it. *Id.* at 47.

  3. <u>Hair clippers</u>

Plaintiff claims that dirty hair clippers are used on inmates and have caused him multiple rashes and an infection. *Id.* at 25-26, 48. Plaintiff submits that he contracted folliculitis from clippers and was prescribed steroid cream, which worked, but that treatment was delayed for many months. *Id.* at 6, 26-27, 48-49. Plaintiff maintains that he asked "Deputy Pinter" to clean the clippers multiple times, but the practice of not cleaning the clippers has continued. *Id.* at 48.

    4.    <u>Lighting</u>

Plaintiff is suing because he alleges that the lights at JCADC remained on twenty-four hours a day for three months before finally being shut down manually. *Id.* at 32. Plaintiff testified at the omnibus hearing that his "complaint is, if you could shut them down manually at one point in time, why couldn't you shut them down manually sometime during the last three months?" *Id.*

    5.    <u>Allegations against Captain Nelson</u>

Plaintiff is suing Captain Nelson in his official and individual capacities because he is "the last line of defense" for inmates because he is a supervisor over all deputies. *Id.* at 29. Plaintiff maintains that he made Captain Nelson directly aware of "the medical problems, the strip searches in front of cameras in the years, the searches through my legal mail, he has been made aware of the opening of legal mail, the reading of legal mail." *Id.* at 30. Plaintiff claims that he asked Captain Nelson to provide him a secure phone line. *Id.* at 35.

    6.    <u>Allegations against Sheriff Ezell</u>

Plaintiff has sued Sheriff Ezell in his official and individual capacities, claiming that he spoke to Sheriff Ezell and made him aware of his medical needs and conditions at JCADC. [27] at 28, 47. Plaintiff claims that his mother also spoke to Sheriff Ezell on a couple of occasions about Plaintiff not receiving medication for ulcerative colitis. [27] at 25.

C.  Plaintiff's request to extend the deadline for amending pleadings and joining parties

Plaintiff desires to add two healthcare Defendants, Byron Herpich M.D. and Nurse Jennifer Wilkinson. [39] at 1, [39-2] at 4. His proposed new allegations concern events occurring after the omnibus hearing. [39] at 3. Plaintiff maintains that he did not file his Motion sooner because he was under medical observation several times and did not consistently have access to his legal paperwork. *Id.* at 1-2.

As grounds for amending the pleadings a second time and joining two new parties, Plaintiff asserts that he became very sick after the omnibus hearing, and his multiple requests to see Dr. Herpich were ignored. *Id.* at 2. He claims that in February 2022, Nurse Wilkinson came to his cell "and told Plaintiff he was faking a medical emergency by using Kool-Aid and bread to fake bloody stool" and to "not call her again and left." *Id.* at 2. Plaintiff was charged with a rule violation by Captain Nelson and alleges that it was later dismissed when a video revealed that he was indeed sick and did not fake a medical emergency. *Id.* at 3. Plaintiff claims that the judge presiding over his criminal trial was required to intervene, held an emergency hearing, and

> ordere[d] the ADC give Plaintiff medication, Plaintiff never saw Dr. Herpich but was given Mescamine for inflammation. Mescamine is not strong enough by itself to stop severe U.C. symptoms. Plaintiff asked for Prednisone his prescribed steroid.

*Id.* at 2.

Plaintiff received Prednisone in March 2022 that was prescribed by "Dr. Renee Shiao of Digestive Regional Health." *Id.* at 2-3. He submits that Dr. Herpich has not seen him "to get lab results from tests and discuss treatment options."

Plaintiff asks that the "final amended complaint not be due until October 21, 2022 to allow both parties proper discovery process" and because he is in the process of transferring to an MDOC facility. *Id.* at 5. Plaintiff's Motion for Extension of Time to Amend Complaint and Pleadings [39] was filed June 10, 2022. Defendants have not responded to the Motion.

## II. DISCUSSION

A. <u>Legal standards</u>

1. <u>Dismissal under Federal Rule of Civil Procedure 12(b)(6)</u>

"The pleading standards for a Rule 12(b)(6) motion to dismiss are derived from Rule 8 of the Federal Rules of Civil Procedure, which provides, in relevant part, that a pleading stating a claim for relief must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *In re McCoy*, 666 F.3d 924, 926 (5th Cir. 2012). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Fifth Circuit has explained the *Iqbal/Twombly* standard as follows:

> In order for a claim to be plausible at the pleading stage, the complaint need not strike the reviewing court as probably meritorious, but it must raise "more than a sheer possibility" that the defendant has violated the

law as alleged. The factual allegations must be "enough to raise a right to relief above the speculative level."

*Oceanic Expl. v. Phillips Petroleum Co. ZOC*, 352 F. App'x 945, 950 (5th Cir. 2009) (citing Twombly, 550 U.S. at 570).

The Court need not "accept as true conclusory allegations or unwarranted deductions of fact." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994)). However, "[p]leadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain." *Hughes v. Tobacco Inst. Inc.*, 278 F.3d 417, 420 (5th Cir. 2001) (citing *Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 891 (5th Cir. 1988)). "The issue is not whether the plaintiffs will ultimately prevail, but whether they are entitled to offer evidence to support their claims." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). "[A] motion to dismiss under 12(b)(6) is viewed with disfavor and is rarely granted." *IberiaBank Corp. v. Illinois Union Ins. Co.*, 953 F.3d 339, 345 (5th Cir. 2020) (quoting *Leal v. McHugh,* 731 F.3d 405, 410 (5th Cir. 2013)).

In deciding a Rule 12(b)(6) motion to dismiss, a court may consider the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *See Doe v. United States*, 853 F.3d 792, 800 (5th Cir. 2017), *as revised* (Apr. 12, 2017); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes."). "[A] pro se complaint, however inartfully pleaded,

must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation omitted).

      2.    <u>Dismissal under Federal Rule of Civil Procedure 12(c)</u>

A motion for judgment on the pleadings "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). "[T]he standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6)." *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 439 (5th Cir. 2015). The Court's review under Rule 12(c) is restricted to the pleadings - the complaint; the answer; and, if ordered, a reply to the answer. *Id.* at 440. But the Court may also consider exhibits "if they are referred to in the . . . complaint and are central to [one of the] claim[s]." *Id.*

B.    <u>Analysis</u>

      1.    <u>The Vital Core Defendants' Motion to Dismiss [19] should be granted in part and denied in part</u>

First discussed are Plaintiff's claims asserted under HIPAA against Nurses Hand and Harris because they should be dismissed. Plaintiff's remaining claims against the Vital Core Defendants, consisting of state law claims for medical malpractice and federal constitutional claims, are then discussed and should be proceed for now.

            a.    <u>Plaintiff's HIPAA claims should be dismissed without prejudice for lack of subject matter jurisdiction</u>

13

Plaintiff's claims asserting violations of HIPAA should be dismissed without prejudice for lack of subject matter jurisdiction. "[T]here is no private cause of action under HIPAA and therefore no federal subject matter jurisdiction" over such claims. *See Acara v. Banks*, 470 F.3d 569, 572 (5th Cir. 2006); *see Roberts v. Unitrin Specialty Lines Ins. Co.*, 405 F. App'x 874, 882 (5th Cir. 2010). "[A]n individual's only redress for an alleged HIPPA violation is to lodge a written complaint with the Secretary of Health and Human Services, through the Office for Civil Rights, which has the discretion to investigate the complaint and impose sanctions, both civil and criminal." *Brown v. Hill*, 174 F. Supp. 3d 66, 71 (D.D.C. 2016).

> b. <u>Plaintiff's medical malpractice claims should proceed because the Vital Core Defendants have not addressed Plaintiff's argument that kiosk grievances satisfied Mississippi law's pre-suit notice requirement</u>

The Vital Core Defendants argue that Plaintiff's medical malpractice claims must be dismissed due to Plaintiff's failure to comply with Mississippi Code Annotated Section 15-1-36(15), which requires that a prospective plaintiff provide at least a sixty-day pre-suit notice to a defendant health care provider where the complaint alleges a cause of action based upon the health care provider's alleged professional negligence. Miss. Code Ann. § 15-1-36. The sixty-day pre-suit notice is a mandatory prerequisite to filing a medical malpractice claim, and strict compliance is required. *Spann v. Wood*, 269 So. 3d 10, 12 (Miss. 2018) "[F]ailure to satisfy the requirements mandates dismissal without prejudice." *Id.* The pre-suit notice requirement is substantive, rather than procedural and, therefore, is applicable in

14

this action in federal court. *See Redmond v. Astrazeneca Pharmaceuticals LP*, 492 F.Supp.2d 575 (S.D. Miss. 2007).

In response to the Vital Core Defendants' Motion to Dismiss, Plaintiff argued that he notified "Defendants 90 days prior to action multiple times via the kiosk and written grievances." [24] at 2. The Vital Core Defendants did not file a rebuttal and have not responded to this argument. The medical malpractice claims should proceed for now, with Defendants allowed to reassert their pre-suit notice argument in a future dispositive motion that addresses Plaintiff's position.

### c. Plaintiff's federal constitutional claims should not be dismissed as illegible, unconcise, or conclusory

The Vital Core Defendants argue that the Amended Complaint, as a whole, "is not clearly legible or concise, and it fails to plead any non-conclusory allegations of wrongful conduct by these defendants that state a plausible claim." [19] at 2. Simultaneously, the Vital Core Defendants acknowledge that Plaintiff is asserting that the acts or omissions of medical staff violated his constitutional rights. *Id.* at 2. Plaintiff states in his Amended Complaint that the federal constitutional claims he is pursuing are "1. Due Process 14th Amendment 2. Compulsory Process 6th Amendment, 8th Amendment Cruel and Unusual Punishment." [7] at 3.

Plaintiff's Amended Complaint should not be dismissed as illegible, unconcise, or conclusory. A *pro se* complaint is held to less stringent standards, an omnibus hearing was held, and at the motion to dismiss stage, Plaintiff's pleaded facts must be taken as true and viewed in the light most favorable to him.

In sum, while Plaintiff's HIPAA claims should be dismissed without prejudice for lack of subject matter jurisdiction, Plaintiff's remaining claims against the Vital Core Defendants, which consist of medical malpractice claims and federal constitutional claims, should proceed. This decision does not reflect any opinion of the Court as to the merits of Plaintiff's claims against the Vital Core Defendants.

2. Jackson County Sheriff's Department's Motion for Judgment on the Pleadings [28] should be granted

The Jackson County Sheriff's Department is correct that it is not a proper party. The Jackson County Sheriff's Department is not a political subdivision or legal entity, in and of itself, but rather is a department of Jackson County. *See Whitfield v. Mississippi Bureau of Narcotics*, No. 3:17CV987-HSO-JCG, 2019 WL 6534144, at *3 (S.D. Miss. Dec. 4, 2019); *Smith v. City of Gulfport, Miss.*, No. 1:09CV423-HSO-JMR, 2011 WL 5035976, at *10 (S.D. Miss. Oct. 21, 2011); *see* Fed. R. Civ. P. 17(b) (providing that an entity's capacity to sue and be sued is determined under state law).

Plaintiff has sued Sheriff Ezell and Captain Nelson in both their individual and official capacities. Official-capacity claims are treated as claims against the government entity. *See Turner v. Houma Mun. Fire and Police Civil Serv. Bd.*, 229 F.3d 478, 483 (5th Cir.2000) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) and *Monell v. New York City Dep't. of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978)). A claim against a defendant only in their "official capacity" does not involve personal liability to the individual defendant. *Id.* at 483.

Jackson County Sheriff's Department's Motion for Judgment on the Pleadings [28] should be granted and Jackson County Sheriff's Department dismissed. Because

16

the official-capacity claims against Sheriff Ezell and Captain Nelson are claims against Jackson County itself, adding Jackson County as a defendant would be redundant and is unnecessary.

> 3. <u>Plaintiff's Motion Extension of Time to Amend Complaint and Pleadings [39] should be briefed</u>

Plaintiff's Motion for Extension of Time to Amend Complaint and Pleadings [39] should be held in abeyance until after Defendants have responded to this Motion. Defendants will be ordered to address Plaintiff's proposed new allegations, proposed new parties, and proposal that the "final amended complaint not be due until October 21, 2022 to allow both parties proper discovery process" and because Plaintiff is in the process of transferring to an MDOC facility. [39] at 5.

## III. <u>CONCLUSION</u>

It is recommended that the Vital Core Defendants' Motion to Dismiss [19] be granted to the extent that Plaintiff's claims advanced under HIPAA be dismissed without prejudice for lack of subject matter jurisdiction, and denied in all other respects, allowing the state law claims for medical malpractice and federal constitutional claims to proceed. The Jackson County Sheriff's Department's Motion for Judgment on the Pleadings [28] should be granted and the Sheriff's Department dismissed as an improper party. Plaintiff's Motion for Extension of Time to Amend Complaint and Pleadings [39] should be held in abeyance until after Defendants respond to the Motion.

IV. <u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

Within fourteen days after being served with a copy, any party may serve and file with the Clerk of Court written objections to this Report and Recommendation. Within seven days of service of the objection, the opposing party or parties must either serve and file a response or notify the district judge that they do not intend to respond to the objection. L.U.Civ.R. 72(a)(3).

A district judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. See 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. A district judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED**, this the 19th day of July, 2022.

*s/ Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE